UNITED STATES, Appellee,

v.

Willie B. JONES, Private First Class,
United States Army, Appellant.

No. 34,825.

CM 434335.

U. S. Court of Military Appeals.

Feb. 20, 1979.

Appearances: For Appellant—*Captain Keven E. O'Brien* (argued); *Lieutenant Colonel John R. Thornock; Major Benjamin A. Sims* (on brief); *Captain D. David Hostler* (on brief); *Captain Michael P. LaHaye* (on brief).

For Appellee—*Lieutenant Colonel R. R. Boller* (argued); *Colonel Thomas H. Davis; Major Michael B. Kennett* (on brief); *Captain Jack M. Hartman* (on brief).

Opinion of the Court

COOK, Judge:

Contrary to his pleas, the appellant was convicted, by a general court-martial consisting of a military judge alone, of larceny and assault and battery, in violation of Articles 121 and 128, Uniform Code of Military Justice, 10 U.S.C. §§ 921 and 928, respectively. We granted review to determine whether the trial court erred in admitting into evidence a pretrial statement of the appellant.

As the offenses occurred in the civilian community of the Federal Republic of Germany and the victim was a Turkish national residing in Germany, the German authorities became involved in the investigation. A German police officer testified that he interrogated the appellant "in the room of the CID at Grafenwoehr." He further stated that the interrogation was conducted solely for the benefit of the German Government. The parties agree there were no Americans present during the interrogation. Although the German police officer gave the appellant various warnings, the advice did not comply with the requirements of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). There is some disagreement as to whether the advice complied with Article 31(b), UCMJ,

10 U.S.C. § 831(b), but for the purpose of this appeal, we will assume that it was deficient. At the interrogation, appellant executed a written pretrial statement, which contained damaging admissions. Over defense objection, the statement was introduced into evidence at trial.

The issue presented for review is whether appellant's interrogation should have been preceded by warnings required by Article 31(b) and *Miranda v. Arizona, supra.* As the offenses were committed by an American serviceman in the civilian community of Germany, under applicable law both the United States military and the Federal Republic of Germany had jurisdiction over the offenses, but the German Government possessed the primary right to prosecute. Article VII, sections 2 and 3, Agreement between the Parties to the North Atlantic Treaty regarding the Status of their Forces (NATO SOFA), June 19, 1951, [1953], 2 UST 1792, TIAS No. 2846, 199 UNTS 67. However, Germany has agreed to waive its primary right, if American officials request such waiver, subject to a right of recall for an individual case. Article 19, sections 1 and 3, Supplemental Agreement to NATO SOFA with Respect to Forces Stationed in the Federal Republic of Germany, [1963], 1 UST 531, TIAS No. 5351, 481 UNTS 282. Both Governments are bound to assist each other in implementing the agreements. Article VII, section 6(a), NATO SOFA.

Appellant submits that as the international agreements reflect a likelihood of trial by court-martial and the parties are required to assist each other in criminal interrogations, American officials were required to warn him of his rights under American law prior to his delivery to the German authorities or, alternatively, the German authorities were required to warn him of such rights prior to the interrogation.

■ Appellant urges the Court to adopt a rule which would require American officials to advise an accused of his rights under American law whenever they turn him over to foreign officials or otherwise make him

available for interrogation by such officials. This issue was examined in the context of Article 31(b) and rejected in *United States v. Plante*, 13 U.S.C.M.A. 266, 273, 32 C.M.R. 266, 273 (1962), with the remark:

> [E]ven though the end sought by the proposition contained in the assignment might be desirable, we would not be justified in adopting it by judicial legislation. Its desirability must be advocated elsewhere.

Upon further examination, we perceive practical difficulties in implementing such a rule where a foreign interrogation is involved. Initially, we note that such advice may be inconsistent with the law of the foreign country involved. Furthermore, government counsel has asserted in the present case, without defense objection, that the law of the Federal Republic of Germany would permit adverse comment upon the silence of an accused. Thus, an accused can actually be harmed if he is tried by a foreign court and attempts to assert his rights consistently with American law. We, therefore, decline appellant's invitation to fashion a new rule which, as a practical matter, cannot be applied in a foreign country.

█ We turn now to the question of whether the German authorities were required to warn appellant of his rights prior to the interrogation. The issue is not new to the Court. In *United States v. Grisham*, 4 U.S.C.M.A. 694, 16 C.M.R. 268 (1954), the Court concluded that Article 31(b) warnings were not required when an accused was interrogated by French authorities in the presence of an American military policeman and an interpreter who was employed by the American military. That holding was predicated on the language of Article 31(b), which limited its application to "person[s] subject to" the Uniform Code. As the French authorities were not subject to the Code, they were not obligated to provide the advice required by Article 31(b). However, the Court cautioned that persons subject to the Code could not evade the requirements of the Article by utilizing "the

services of a person not subject to the Code as an instrument for eliciting disclosures without warning." *Id.* at 696, 16 C.M.R. at 270. Applying the instrumentality test, the Court held that the mere presence of military investigators, who did not participate in the questioning, was not sufficient to make Article 31(b) operative. Later cases have similarly emphasized that, when foreign agents are acting independently and not at the direction of the American authorities, the mere presence of an American military policeman during an interrogation by the foreign agents does not require the Article 31(b) advice. *United States v. Swift*, 17 U.S.C.M.A. 227, 38 C.M.R. 25 (1967); *United States v. Plante, supra*.

In the *Plante* case, pursuant to a request of the French police, a military policeman accompanied the accused to the French police headquarters, where the accused was interrogated without being given an Article 31(b) warning. Although two military policemen were present during the interrogation,[1] they did not take part in the questioning of the accused. The accused made several incriminating admissions during this interrogation. He was subsequently interviewed by one of the military policemen who was present during the French interrogation. At this time, the accused was given an Article 31(b) warning and made additional incriminating statements. At trial, the defense objected to the admission of the statements made to the American interrogator because they were the product of the earlier admissions to the French police. The Court concluded that whether the French police were acting as an instrumentality of the American authorities had properly been resolved against the appellant at trial.

The nexus between the foreign authorities and the United States authorities in the present case was even more ephemeral than that encountered in *Plante*. Indeed, the only connection between the two was the fact that the military made the accused available for an interrogation by the for-

---

1. Another military policeman joined the group during the interrogation of the accused.

eign authorities. Appellant admits that the high probability that he would be tried by the military mandates the conclusion that the foreign police agents were acting as instrumentalities of the military.[2] We disagree.

■ In a related matter involving the applicability of Article 31(b) to United States civilian police authorities, the Court has held that a general agreement that an accused will be tried by court-martial does not impose the requirement of a military-type advice as to the rights of an accused upon the civilian police. *United States v. Aau*, 12 U.S.C.M.A. 332, 30 C.M.R. 332 (1961). As previously observed, the test is whether the civilian or foreign police authority is acting as an instrumentality of the military authorities. In the present case, the German authorities were investigating offenses which were committed in the civilian community of the Federal Republic of Germany against a civilian. Under such circumstances, we conclude the issue was properly resolved against the appellant. Indeed, the interest of the German authorities in the matter would appear to be a natural and probable consequence of the offense.

■ We turn now to the applicability of the warning requirements set forth in *Miranda v. Arizona, supra*. This issue has been addressed by the federal courts on numerous occasions. In *United States v. Mundt*, 508 F.2d 904, 906 (10th Cir. 1974), *cert. denied*, 421 U.S. 949, 95 S.Ct. 1682, 44 L.Ed.2d 103 (1975), the court observed:

> The cases are unanimous in holding that a warning is not essential to the validity of a confession which has been given in a foreign country.

. . . . .

So, therefore, the only question which we need consider is whether the participation by the American authorities was so extensive as to require that the statements be excluded.

Thus, the court held in *Mundt* that the fact an American undercover agent played a substantial part in the arrest of the accused by the Peruvian police was not sufficient to require *Miranda* warnings prior to a subsequent interrogation by the foreign policemen as "they were not mere instruments of United States officials." *Id.* at 907. In discussing the inapplicability of the *Miranda* requirements to foreign interrogations, the court in *Kilday v. United States*, 481 F.2d 655, 656 (5th Cir. 1973), observed, "the United States Constitution cannot compel such specific, affirmative action by foreign sovereigns." Accordingly, the analysis of the federal courts as to the applicability of *Miranda* is substantially equivalent to this Court's test for determining whether a foreign police agent is required to give an accused an Article 31(b) warning. The issue is whether the foreign police agent is a mere instrumentality of American authorities and, therefore, the interrogation is, in essence, an American interrogation. The presence of an American agent is insufficient to invoke the requirements of *Miranda*. *United States v. Welch*, 455 F.2d 211 (2d Cir. 1972); *United States v. Nagelberg*, 434 F.2d 585 (2d Cir. 1970), *cert. denied*, 401 U.S. 939, 91 S.Ct. 935, 28 L.Ed.2d 219 (1971). Furthermore, the furnishing of information which results in the interrogation of an accused by a foreign police agent is insufficient action to require *Miranda* warnings. *United States v. Chavarria*, 443 F.2d 904 (9th Cir. 1971). As with the question involving the applicability of Article 31(b), we conclude that the actions of the American authorities in the present case were not of such a nature as to render the German policemen instrumentalities of the American authorities for the purpose of invoking the *Miranda* warnings.

Finally, the appellant submits that the Court's opinion in *United States v. Jordan*,

**2.** Appellant has submitted numerous statistics in support of his argument that, as a practical matter, he would be tried by court-martial, although the Federal Republic of Germany possessed the primary right of jurisdiction. In view of our disposition of the case, we need not address the impact of appellant's statistical analysis.

1 M.J. 334 (C.M.A.1976),[3] requires Article 31(b)/*Miranda* warnings whenever there is any involvement by American officials. As I dissented in *Jordan* it presents no basis to me for extending the applicability of the Article 31(b)/*Miranda* warnings. However, a majority of the Court held:

> [F]or trials by court-martial commencing after the date of this opinion, whenever American officials are present at the scene of a foreign search or, even though not present, provide any information or assistance, directive or request, which sets in motion, aids, or otherwise furthers the objectives of a foreign search, the search must satisfy the Fourth Amendment as applied in the military community before fruits of the search may be admitted into evidence in a trial by court-martial.

1 M.J. at 338. *Jordan* overruled *United States v. DeLeo*, 5 U.S.C.M.A. 148, 17 C.M.R. 148 (1954), which required a greater degree of American involvement before a search could be characterized as an American search for Fourth Amendment purposes. Appellant reasons that a similar relaxation of American involvement necessarily follows for the purpose of applying the requirements of Article 31(b) and *Miranda*, and reversal is required. We disagree.

■ While the quoted language from *Jordan* refers to American "assistance," the operative language is "sets in motion, aids, or otherwise furthers the objectives of a foreign search." Thus, the Court in *Jordan* recognized that there must be an element of causation between the American activity and the production of incriminating evidence to invoke the requirements of the Fourth Amendment. In the present case,

the military merely made the appellant available to the foreign authorities. While this may be "assistance" in a general sense and consistent with Article VII of the NATO SOFA, it is not a direct producing cause of the incriminating statement. Indeed, the military was merely responding to a request of the foreign authorities; the foreign authorities set the interrogation in motion, to paraphrase from *Jordan*. Accordingly, we conclude that even assuming for the purpose of this appeal that the *Jordan* standard which involved a Fourth Amendment right also applies to the Fifth Amendment right not to incriminate oneself, an issue which we do not now decide,[4] there was insufficient American involvement under that standard to invoke the Fifth Amendment.

■ An examination of the record reflects that the appellant's pretrial statement was executed under circumstances which do not raise a question of its trustworthiness.[5]

The decision of the United States Army Court of Military Review is affirmed.

Judge PERRY concurs.

FLETCHER, Chief Judge (concurring):

I agree with the lead opinion in its conclusion that our decision in *United States v. Jordan*, 1 M.J. 334 (C.M.A.1976), is inapplicable to the case at bar. As to its analysis with respect to Article 31, Uniform Code of Military Justice, 10 U.S.C. 831, I would add that it is unrealistic to construe the NATO Status of Forces Agreement either on its face or in conjunction with general statis-

---

**3.** The citation is to the opinion of the Court on reconsideration; the original opinion held that all foreign searches must meet Fourth Amendment standards if the evidence derived therefrom is used in a court-martial. *United States v. Jordan*, 1 M.J. 145 (C.M.A.1975).

**4.** Appellant's trial preceded the effective date of the standard announced in our final opinion in *Jordan* (1 M.J. 334, 338 (C.M.A.1976)). Appellant urges us to use the present case to announce a similar standard for evaluating the

applicability of the Fifth Amendment. However, as noted, we find it unnecessary to address the issue of whether the *Jordan* criterion is applicable to both Fourth and Fifth Amendment rights.

**5.** The question whether a statement was voluntarily given depends upon many circumstances. A relevant factor in evaluating this issue is whether an accused was advised of his various constitutional rights. *See* 18 U.S.C. § 3501.

tics as evidence of subterfuge or an attempt to evade this codal provision. *See United States v. Aau*, 12 U.S.C.M.A. 332, 30 C.M.R. 332 (1961), *United States v. Holder*, 10 U.S. C.M.A. 448, 28 C.M.R. 14 (1959). Finally, I am satisfied with the lead opinion's holding on the question of *Miranda* warnings and find the appellant's confession was voluntary and admissible within the parameters of the Fifth Amendment. *See Bram v. United States*, 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568 (1897).