**UNITED STATES, Appellee,**

v.

**Private First Class Raul VIDAL, SSN 133–56–8779, United States Army, Appellant.**

**CM 443794.**

U.S. Army Court of Military Review.

30 April 1984.

Captain Bernard P. Ingold, JAGC, argued the cause for the appellant. With him on the brief were Colonel William G. Eckhardt, JAGC, Major Robert M. Ott, JAGC, and Captain Thomas J. Feeney, JAGC.

Captain Kurt J. Fischer, JAGC, argued the cause for the appellee. With him on

the brief were Colonel James Kucera, JAGC, Lieutenant Colonel John T. Edwards, JAGC, and Major Joseph A. Rehyansky, JAGC.

Before MOUNTS, YAWN and WERNER, Appellate Military Judges.

OPINION OF THE COURT

MOUNTS, Senior Judge:

On 13, 14 and 15 December 1982, the appellant was tried by a general court-martial comprised of officer members at Kaiserslautern, Federal Republic of Germany. He was convicted of rape and kidnapping, in violation of Articles 120 and 134, Uniform Code of Military Justice, 10 U.S.C. 920 and 934, respectively. The convening authority approved the adjudged sentence to a dishonorable discharge, confinement at hard labor for ten years, forfeiture of all pay and allowances and reduction to the grade of Private E-1.

On the night of 30 August 1982 the appellant and an accomplice abducted and raped a young German student in Sonderheim, Germany. The victim made a complaint of the crimes to the German police in nearby Germersheim, and an investigation ensued. The German police located and apprehended the appellant and his accomplice at their barracks.

After the appellant was placed in custody, Specialist Four Thomas Buggy and another military policeman were summoned to the scene. Upon learning that the appellant had been accused of two serious crimes, Specialist Buggy briefly advised the appellant of his rights to remain silent and counsel under American law. Article 31(b), Uniform Code of Military Justice, 10 U.S.C. 831(b); *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *United States v. Tempia*, 16 U.S.C. M.A. 629, 37 C.M.R. 249 (1967). Specialist Buggy did not attempt to elicit a waiver of those rights or initiate an interrogation. The appellant claimed he asked to see a lawyer, but Specialist Buggy testified that the appellant made no such request to him.

Subsequently, in the early morning of 31 August, the German police, pursuant to their investigation, transferred the appellant from his barracks to the German police station at Germersheim. The two military policemen followed in a separate automobile. After the appellant arrived at the German police station, German authorities decided to administer a blood alcohol test (BAT).

The German police took the appellant to a German hospital for the BAT. The military police did not accompany them. At the hospital the German police asked the appellant to read a document which advised him that he had the right to remain silent and request counsel. The form states in part, "If I am subject to the Uniform Code of Military Justice, appointed counsel may be military counsel of my own choice if he is reasonably available." The appellant wrote on the form that he did not consent to be questioned and requested counsel. The German police officer who was with the appellant when he executed this form, Mr. Helmut Seiter, testified that the form addressed only the appellant's options to remain silent and to counsel with regard to the BAT. The form states, however, that the German police wanted to question the appellant about the kidnapping.

The appellant was taken back to the German police station at Germersheim after completing the BAT. After the German police took some of the appellant's clothes and his shoes, they placed him in a cell furnished with a wooden plank. At approximately 0430 hours, Special Agent (SA) Jeffrey Zwemke, a Criminal Investigation Command (CID) agent, arrived at the police station. Special Agent Zwemke had been called to investigate the kidnapping and rape.

Before talking to the appellant, SA Zwemke was briefed by Specialist Buggy and Mr. Seiter, but SA Zwemke was not told by Mr. Seiter that the appellant had told him he wanted to remain silent and be provided with counsel.

Special Agent Zwemke woke the appellant in his cell at approximately 0500 hours.

The appellant stated that he initially thought SA Zwemke might be his attorney, but learned that he was a CID agent and had "doubts about talking to him at all." Special Agent Zwemke testified that he informed the appellant that "it would be better for him to make a statement, told him to tell me the truth, and that the Germans didn't know if they were going to prosecute or not...." The appellant waived his rights and gave SA Zwemke an incriminating statement.

At an Article 39(a)[1] session, the appellant moved that the military judge suppress the incriminating statement. The military judge denied the motion and made specific factual findings: (1) the appellant did not assert his right to counsel to Specialist Buggy; (2) the German police advised the appellant he could have counsel only with respect to the BAT; (3) SA Zwemke was not advised that the appellant had requested counsel in response to the German advisement; and (4) the appellant's waiver and statements were voluntary under the totality of the circumstances and were not the result of physical or psychological coercion, threats, or unlawful promises or inducements.

■ The central issue in this case is whether an accused's assertion of his rights under American law to remain silent and counsel during a police initiated custodial interrogation by law enforcement officials of a foreign country invokes the rule of *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), regarding a subsequent interrogation of that individual by the authorities of a jurisdiction of the United States. We hold that it does not.

In *Edwards v. Arizona, supra,* the United States Supreme Court held that

[A]n accused, ... having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates fur-

ther communication, exchanges, or conversations with the police.

*Id.* at 484–85, 101 S.Ct. at 1884–85. In *Oregon v. Bradshaw,* — U.S. —, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983), the Court clarified *Edwards* by confirming that it had announced a "prophylatic rule," i.e., the police are flatly precluded from initiating an interrogation of an accused after he has asserted his right to counsel until after counsel has been provided to him. *Id.* at —, 103 S.Ct. at 2834. In fact, *Edwards* applies even if the police who conduct the subsequent interrogation of the accused are unaware of his earlier assertion of his rights. *White v. Finkbeiner,* 687 F.2d 885 (7th Cir.1982). If the police say or do something that renders the conversation initiated by the accused an interrogation, then the question that must be addressed is whether the accused intelligently, knowingly and voluntarily, under the totality of the circumstances, waived his previously invoked rights. *Oregon v. Bradshaw,* — U.S. —, —, 103 S.Ct. at 2834.

■ In the case *sub judice,* the appellant contends he initially asserted his rights to remain silent and to counsel to the German authorities, thereby invoking the *Edwards* rule regarding his interrogation by SA Zwemke. We disagree. In our opinion, the appellant could only invoke *Edwards* by asserting his rights in response to a custodial interrogation by agents who are bound by procedures mandated by the United States Constitution. The actions of officials of the German government are not procedurally controlled by the United States Constitution. The actions or knowledge of the German police are not imputed to United States officials under *Edwards* unless a United States official causes the foreign officials to act in his stead. *See United States v. Morrison,* 12 M.J. 272 (C.M.A.1982). Moreover, ruling that the appellant's statement to SA Zwemke is inadmissible under these circumstances might induce the Germans in the future to retain jurisdiction over cases in which the accused has requested counsel from for-

---

1. Article 39(a), Uniform Code of Military Justice, 10 U.S.C. 839(a).

eign authorities. Also, application of the *Edwards* rule in this case would place on United States military police an unnecessary burden for operating in a foreign country. United States military police need to perform their vital worldwide police functions without being required to tacitly coordinate with foreign police officials or know of their procedures. Therefore, we hold that since the appellant did not assert his rights under American law to counsel or to remain silent to a person bound by the principles of the United States Constitution, the *Edwards* rule was not invoked.[2] In other words, United States military police do not have to determine whether a suspect in the custody of foreign police has invoked his rights to remain silent or counsel before they initiate custodial interrogation and seek the accused's voluntary, intelligent and knowing waiver of those rights.

■ Of course, if American authorities attempt to use foreign police officials as a subterfuge to accomplish ends which would be illegal if performed by them, the evidence obtained by this action must be suppressed. *United States v. Morrison, supra.* Viewing the evidence of record as a whole we find some cooperation between the German police and United States military police, but no evidence of any subterfuge, inappropriate conduct or collusion.

■ We further find that the appellant's waiver of his rights to SA Zwemke was knowing, voluntary and intelligent under the totality of the circumstances. The issue was fully litigated at trial and the military judge made findings of fact concerning this issue, which were set out earlier in this opinion. We have carefully reviewed these findings and find them to be amply supported by the evidence.

The Court finds that the other issues raised by the appellant are without merit.

The findings of guilty and the sentence are affirmed.

Judge YAWN and Judge WERNER concur.

---

2. We also note that the right to remain silent under German law apparently operates somewhat differently than under American law: at a trial by the German authorities, adverse comment upon the silence of an accused is permitted. *United States v. Jones,* 6 M.J. 226, 228 (C.M.A.1979).