**UNITED STATES**

**v.**

**Senior Master Sergeant Eriskia SMITH, Jr., FR 419–64–3754, United States Air Force.**

**ACM 27464.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 7 Dec. 1988.

Decided 3 May 1989.

Appellate Counsel for the Appellant: Colonel Richard F. O'Hair and Captain Paul M. Dankovich.

Appellate Counsel for the United States: Colonel Joe R. Lamport, Lieutenant Colonel Robert E. Giovagnoni and Major Terry M. Petrie.

Before HODGSON, HOLTE and PRATT, Appellate Military Judges.

DECISION

PRATT, Judge:

Consistent with his pleas, appellant was convicted, by a general court-martial with members, of the use and possession of marijuana. He was sentenced to a bad conduct discharge and reduction to airman first class. The convening authority approved the sentence as adjudged.

Before this Court, appellant asserts that the approved bad conduct discharge is unduly harsh in light of his long and distinguished Air Force career. We disagree and affirm.

There can be no argument that appellant's career was both long and distinguished. At the time of these offenses, appellant was a Senior Master Sergeant with 22½ years of active military service. Having risen steadily through the ranks and various positions within the security police career field, he was the Superintendent of Security Police Operations at Davis–Monthan Air Force Base at the time of these offenses. His performance reports, awards and decorations, the testimony of his squadron commander and of two ranking NCO's from his squadron, the testimony of his three children, his own unsworn statement, and posttrial clemency letters

by these witnesses and nearly a dozen others, all reflect that appellant had distinguished himself as an NCO, as a father, and as a friend. Anyone would be proud, indeed, to have amassed such a record of service and personal loyalty.

On 31 July 1988, appellant was on temporary duty at Hurlburt Field, Florida, where he resided in the Visiting Airmen's Quarters (VAQ). On 3 August, a VAQ neighbor reported the odor of burning marijuana coming from the vicinity of appellant's room. A subsequent consensual search of appellant's room led to the discovery of the following drugs and paraphernalia:

—a baggie containing 29 partially burned marijuana cigarettes;

—a partially burned marijuana cigarette (in his wallet);

—a baggie containing 1.6 grams of marijuana;

—a baggie containing 2.1 grams of marijuana;

—a baggie containing 7.8 grams of marijuana;

—a baggie containing 8.3 grams of marijuana;

—a baggie containing 9.2 grams of marijuana;

—2 packages of "E–Z Wider" brand cigarette rolling papers; and

—1 package of "JOB" brand cigarette rolling papers.

In addition, appellant provided a urine sample which tested positive for the presence of the THC metabolite indicative of marijuana.

The human tragedy inherent in cases such as this is staggering. Here we have a retirement-eligible senior NCO, with unquestionably outstanding service to his country spanning the majority of his lifetime. In addition, as the record reflects, we have a wife and three children who have themselves endured the rigors associated with a military career and have, in that sense, contributed significantly to appellant's success therein. For some reason, reportedly related to years of underlying marital stress, appellant made a choice which put his respectability, his freedom, his economic security, and the welfare of his family at considerable risk.

In assessing the appropriateness of a punitive discharge, certainly appellant's dedicated service and many distinguished accomplishments, together with the sacrifices and welfare of his family, must be duly considered. Sentencing must not take place in a vacuum; each offender is an individual and an appropriate sentence must be tailored to that individual and his crimes. *United States v. Mamaluy*, 10 U.S.C.M.A. 102, 27 C.M.R. 176 (1959). So too, however, must we consider his individuality in assessing the gravity of his offenses.

Appellant was a senior NCO and a security policeman. He occupied a vital position of leadership within a squadron whose mission includes the detection and eradication of drug abuse in the Air Force.* As reflected in his performance reports, his career field afforded him, over the years, a front row seat in the Air Force's war on drugs, with particular access to an understanding of the critical need for that war. His rank and position carried with them the responsibility, reportedly fulfilled, for counselling younger NCO's and airmen on the evils of drugs, their negative impact on both the Security Police and Air Force missions, and the range of disciplinary consequences for their abuse. His age and experience freed him from the often powerful lure of peer pressure to which many of our young airmen unfortunately succumb. Yet we find him, on an Air Force installation, using marijuana and in possession of, relatively speaking, a significant quantity thereof.

It is important to keep in mind the distinction between sentence appropriateness and clemency. The Court of Military Appeals explained this distinction in *United*

---

* Whether or not, under the particular facts of this case, appellant's status as a security policeman would have been an improper subject for presentencing argument by counsel, *United States v. Collins*, 3 M.J. 518 (A.F.C.M.R.1977), it is an entirely proper matter for consideration by this Court in assessing sentence appropriateness. *See United States v. Brooks*, 12 M.J. 558 (A.F.C.M.R.1981), *pet. denied* 13 M.J. 204 (C.M.A.1982).

*States v. Healy,* 26 M.J. 394 (C.M.A.1988), stating that "[s]entence appropriateness involves the judicial function of assuring that justice is done and that the accused gets the punishment he deserves. Clemency involves bestowing mercy—treating an accused with less rigor than he deserves." 26 M.J. at 395. The function of this court is sentence appropriateness, not clemency. *United States v. Holt,* 28 M.J. 835 (A.F.C. M.R.1989).

These offenses, committed as they were by a man of appellant's background and position, represent a senseless and inexcusable abdication of appellant's responsibility to obey the law, to uphold Air Force standards, and to fulfill an important leadership role within our community. The impact of appellant's offenses upon his squadron and base community, although not susceptible to precise measurement, is potentially quite substantial.

■ With the juxtaposition of lengthy outstanding service and significant misconduct, we are now confronted with assessing the appropriateness of a punitive discharge. We are confident this same dichotomy required considerable soul-searching by both the court members and the convening authority. The court members, in apparent consideration of appellant's fine record, determined that neither confinement nor forfeitures were appropriate. However, neither they nor the convening authority could escape the conclusion that an appropriate sentence, in light of all competing considerations, included a punitive discharge. In the exercise of our independent discretion, neither can we. Article 66(c), UCMJ, 10 U.S.C. § 866(c).

Accordingly, we find that the approved findings and sentence are correct in law and fact and, on the basis of the entire record, are

AFFIRMED.

Chief Judge HODGSON and Judge HOLTE concur.