**UNITED STATES**

v.

**Airman First Class Kevin A. FRENCH, FR004–80–4588 United States Air Force.**

**ACM 29123.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 14 Nov. 1990.

Decided 24 Nov. 1992.

---

Appellate Counsel for the Appellant: Colonel Jeffrey R. Owens and Captain Michael D. Burt.

Appellate Counsel for the U.S.: Colonel William T. Hoffman, Lieutenant Colonel Brenda J. Hollis, Major Paul H. Blackwell, Jr., and Major Ann M. Mittermeyer.

Before DIXON, McLAUTHLIN and HEIMBURG, Appellate Military Judges.

## OPINION OF THE COURT

McLAUTHLIN, Senior Judge:

Did "participation" by U.S. officials invalidate the foreign interrogation and search in this case? *See* Mil.R.Evid. 305(h)(2) and 311(c)(3). The military judge concluded it did not, and we agree. Finding no merit in this or in appellant's other asserted errors, we affirm.

After denial of motions to suppress his confessions, the evidence derived from those confessions, and the evidence obtained in a search of his house, Airman First Class Kevin A. French entered conditional guilty pleas to possessing lysergic acid diethylamide (LSD), possessing marijuana, and using marijuana. *See* R.C.M. 910(a)(2); *United States v. Forbes*, 19 M.J. 953 (A.F.C.M.R.1985). He pleaded not guilty to using methamphetamine, but the military judge, sitting alone, found him guilty of an attempted use. Appellant's approved sentence includes a bad-conduct discharge, confinement for 8 months, forfeiture of $250 pay per month for 8 months, and reduction to E-1.

## I. FACTS

British police authorities, acting on information obtained from one of the appellant's civilian neighbors, decided to arrest the appellant and his wife on the Royal Air Force (RAF) installations where each worked. A British detective, accompanied by an agent from the Air Force Office of Special Investigations (OSI) and an Air Force security policeman, found the appellant's wife at her place of employment in the Shoppette on RAF Upwood. Appellant's wife freely admitted that drugs were in her house, and agreed to take the detective there.

At the same time, two other British detectives, escorted into the work area by the appellant's first sergeant and another OSI agent, approached the appellant at his duty station on RAF Alconbury. One of the detectives showed his identification to the appellant and cautioned the appellant that he did not have to say anything unless he wanted to, but that if he did say anything it could be used as evidence. The detectives then asked the appellant about the location of drugs in his house.

For the first several minutes, appellant denied any drug involvement. The OSI agent then said something to the effect that, "It would be better to remain quiet than to continue lying." One of the British detectives added, "It would be easier." The appellant then disclosed the location of some LSD and marijuana in the hashish form within the house.

By this time, the British detective and the Air Force personnel with appellant's wife were inside the appellant's home. Because a search warrant issued earlier by a magistrate had an incorrect address on it, the detective initiated a search of the house under the authority of a British statute allowing the search of a home of an arrested subject if a constable believes there are "reasonable grounds" to conclude evidence may be found there. Appellant's wife was cooperating in the search, and had already shown the detective the location of the hashish. When appellant told his questioners where to find the LSD, the OSI agent with the appellant radioed the description to OSI's main office. The OSI agent in the

appellant's home eventually received this information on his radio and relayed it to the British detective. With appellant's description and the assistance of appellant's wife, the LSD was located. After seizing the LSD and marijuana, the British police asked an Air Force drug dog handler to walk a drug dog through the house, but nothing else was discovered.

The British officers handcuffed the appellant for the trip to the British police station using the OSI agent's handcuffs. They quickly removed the cuffs, however, when they found the appellant could not be safely transported while wearing them. At the police station, after specifically declining to make a phone call or contact a solicitor, the appellant again answered the British detectives' questions about his possession and use of drugs.

When the appellant and his wife were released, the appellant's first sergeant picked them up and drove them to the appellant's house. The appellant asked the first sergeant to come in and talk. The first sergeant advised the appellant he would have to read him his rights first, and did so using an "Advisement of Rights" card he carried. After stating that he understood his rights, did not want a lawyer, and was willing to answer questions, the appellant admitted possessing the LSD and "hardly touching" the hashish, which he said was his wife's.

At work the next morning, the appellant asked his immediate supervisor if he had heard what occurred. The supervisor said, "I heard you were arrested. What happened?" The appellant described the circumstances leading to his possession of the LSD. He also said the hashish found in his residence was his wife's, but admitted trying it. The supervisor never advised the appellant of his rights. He testified that he let the appellant continue because it seemed to be "a relief" for the appellant to talk. The supervisor eventually ended the conversation by telling the appellant to seek legal counsel.

## II. APPELLANT'S ADMISSIONS

Appellant contends that OSI's participation in his case mandated Article 31(b),

UCMJ, and *Miranda*[1] advice before his first interrogation. He maintains the trial judge erred in admitting the statements he subsequently made to British investigators and the evidence seized as a result of those statements. We disagree.

■ No Article 31 or *Miranda* advice is required in an interrogation conducted abroad by foreign officials "unless such interrogation is conducted, instigated, or participated in by military personnel or their agents...." Mil.R.Evid. 305(h)(2). However:

An interrogation is not "participated in" by military personnel ... merely because such a person was present at an interrogation conducted in a foreign nation by officials of a foreign government or their agents, or because such a person acted as an interpreter or took steps to mitigate damage to property or physical harm during the foreign interrogation.

*Id.*

■ Our review of the record convinces us that any Air Force involvement in appellant's initial interrogation never exceeded a "mere presence." *See United States v. Jones,* 6 M.J. 226 (C.M.A.1979). In this drug probe initiated, controlled, and concluded by British authorities, appellant was just one of several suspects, and the only U.S. military member mentioned.[2] Nothing in the OSI's earlier awareness of this case, the appearance of Air Force personnel at appellant's first interview, the single comment made by the OSI agent during that interview, or the brief use of the OSI's handcuffs in appellant's arrest, reached the level of "participation" necessary to turn the British interrogation of the appellant into a United States interrogation. *See Jones, supra; United States v. Coleman,* 25 M.J. 679 (A.C.M.R.1987), *aff'd,* 26 M.J. 451 (C.M.A.1988), *cert. de-*

*nied,* 488 U.S. 1035, 109 S.Ct. 850, 102 L.Ed.2d 982 (1989). Therefore, no Article 31 or *Miranda* requirements were invoked when British officials interviewed the appellant. Finding no coercion, unlawful influence, or unlawful inducement in the production of any of the statements appellant provided to British authorities, we agree with the military judge's decision to admit them. Mil.R.Evid. 305(h)(2). We also find no error in the judge's admission of the appellant's fully warned admissions to his first sergeant and his unwarned comments to his supervisor. *See United States v. Loukas,* 29 M.J. 385 (C.M.A.1990).

## III. SEARCH OF APPELLANT'S HOME

■ Appellant next asserts the search of his home was unlawful because it was "participated in" by military personnel and failed to meet Constitutional requirements. Mil.R.Evid. 311(c)(1). Again, we disagree with appellant's "participation" premise. As with foreign interrogations, foreign searches are "not 'participated in' merely because a person is present at a search or seizure conducted in a foreign nation by officials of a foreign government or their agents...." Mil.R.Evid. 311(c). The military judge correctly found that the simple presence of Air Force personnel in the house and the transfer of information from one British investigator to another through OSI channels did not transform the search of appellant's residence into one conducted, instigated, or participated in by military personnel. *See United States v. Koch,* 15 M.J. 847 (A.F.C.M.R.1983).[3] Since there was no evidence of any "gross and brutal maltreatment" in this "foreign search," the military judge properly admitted the evidence seized by British officials. Mil. R.Evid. 311(c)(3).

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. According to the British detectives testifying in appellant's court-martial, British criminal actions were pending against the appellant's wife, his civilian neighbor, and a number of "British [drug] dealers," all the result of the same investigation.

3. The trial judge also correctly observed that any questions regarding the use of the military drug detection dog were mooted since the evidence in issue had already been found before the dog entered the house, and the dog found nothing. It is also worth noting that the dog was brought in solely at the request of the British investigators.

## IV. SUFFICIENCY OF THE EVIDENCE

■ Appellant also argues the evidence is insufficient to convict him of attempting to use methamphetamine. Appellant does not dispute that he and a civilian left their companions one night in a British pub, got into the civilian's car, and used a white powder the civilian referred to as "speed" or "crystal." At trial and on appeal, however, appellant says he thought the substance they used was non-prohibited caffeine.

Our review of the evidence produced at trial convinces us differently. Prosecution Exhibit 3 is appellant's recorded interview with British investigators following his arrest. In it, the appellant was asked specifically if anyone had ever given him amphetamine. He responded, "Not in the pill form it was powder.... They call it crystal, he had put just a little bit on my hand and told me to swallow it." When the British police asked what effect the drug had on him, appellant said, "I stayed up maybe an extra hour or two you know that night...." The appellant also acknowledged in cross-examination that caffeine is normally seen in a pill form and not as a loose white powder. The civilian involved in the incident testified that he "knew" the drug he shared with the appellant "was an illegal substance." The civilian said it "made it feel like your hair was standing up and you had bugs in your hair."

The secretive behavior of the two users, appellant's description of the incident to investigators, and the testimony of appellant's co-actor all contradict appellant's contention that he honestly believed the white powdery substance he took was something innocuous. We are persuaded that a reasonable fact finder could have found beyond a reasonable doubt that the appellant's actions exceeded a mere preparation to intentionally use methamphetamine. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2788, 61 L.Ed.2d 560 (1979). We are also independently convinced of the appellant's guilt of this offense beyond a reasonable doubt. Article 66(c), UCMJ; *United States v. Turner*, 25 M.J. 324 (C.M.A.1987).

## V. SENTENCE APPROPRIATENESS

■ Finally, the appellant maintains his sentence is inappropriately severe. We have stated on numerous occasions that a conviction for drug abuse "can result in a sentence that is both severe and longlasting." *United States v. Holt*, 28 M.J. 835, 836 (A.F.C.M.R.1989); *see also United States v. Smith*, 28 M.J. 863 (A.F.C.M.R. 1989). The appellant faced a maximum punishment of a dishonorable discharge, confinement for 12 years, forfeiture of all pay and allowances, and reduction to E–1. He received a bad-conduct discharge, less than a year's confinement, partial forfeitures for 8 months, and reduction to E–1. The appellant used marijuana in the hashish form for several months. Then, he attempted to use methamphetamine. Finally, he accepted LSD into his home. Considering all the circumstances before us, we find the approved sentence entirely appropriate.

Therefore, having examined the record of trial, the assignment of errors, and the government's reply thereto, we conclude that the findings and sentence are correct in law and fact, the sentence is appropriate, and no error prejudicial to the substantial rights of the appellant was committed. The findings of guilty and sentence are

AFFIRMED.

Chief Judge DIXON and Judge HEIMBURG concur.