**874**

UNITED STATES, Appellee,

v.

Private (E-2) Michael B. DAVIS, SSN
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, United States
Army, Appellant.

SPCM 13343.

U. S. Army Court of Military Review.

17 Jan. 1979.

Colonel Edward S. Adamkewicz, Jr., JAGC, Major Benjamin A. Sims, JAGC, Captain John E. Caulking, JAGC, and Captain Peter A. Nolan, JAGC, were on the pleadings for appellant.

Lieutenant Colonel R. R. Boller, JAGC, Major Robert B. Williams, JAGC, and Captain Harry J. Gruchala, JAGC, were on the pleadings for appellee.

Before JONES, DeFORD and LEWIS, Appellate Military Judges.

## OPINION OF THE COURT

DeFORD, Judge:

The appellant, contrary to his pleas, was convicted of larceny and burglary in violation of Articles 121 and 129, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 921 and 929. His approved sentence included a bad-conduct discharge, confinement at hard labor for three months, and reduction to the grade of Private (E–1).

On appeal, appellant has assigned five errors that he believes justify reversal of his conviction. The Court finds only one error meritorious for the reasons hereafter set forth.

During the night of 7–8 October 1977 at Fort Rucker, Alabama, a person or persons unknown entered the barracks rooms occupied by Privates Ezro, Clark, Fitzgerald and Benton and took certain items of personal property belonging to those occupants while they slept.[1] The following morning Ezro and Clark reported the thefts to their company duty NCO, Staff Sergeant McPhail. A Private Bellend who lived across the hall from Ezro reported that he had seen the appellant clothed in a black karate ghee[2] standing near the door to Ezro's room between 0030 and 0130.

Sergeant McPhail notified the military police of the incident and requested assistance. He also sent the charge of quarters runner to contact the appellant with instructions that the appellant should immediately report to the orderly room.

The appellant disregarded the instructions to report, and Sergeant McPhail, after waiting a short period of time, personally went to the appellant's barracks. McPhail testified that he knocked on the door to Room 21a, entered and walked to the doorway of Room 21b (the appellant's room). He stated that appellant's door was open, and he saw the appellant standing next to his wall locker. He further stated that he did not enter the appellant's room but merely advised the appellant that his presence was required in the orderly room. He also stated he saw a watch with an orange dial and two wallets sitting on the window sill of the appellant's room.

McPhail and the appellant then returned to the orderly room. Investigator Martin of the military police had arrived and was briefed on the incident by McPhail. In the presence of McPhail, Martin advised appellant of his rights under Article 31, UCMJ, 10 U.S.C. § 831. The appellant declined to answer any questions. He was then placed in another room. The appellant then ran from this room. His departure was reported to Sergeant McPhail who, accompanied by two duty MPs, returned to the appellant's room in an attempt to locate him. McPhail again found the appellant in his room and returned him to the orderly room.

As McPhail left the appellant's room, he stopped at the room across the hall and asked its occupant, Hice, whether he had seen the appellant. Hice replied that the appellant had left a duffel bag and a pair of

1. Private Fitzgerald reported the loss of a digital watch and a black wallet; Benton reported the loss of a wallet; Ezro reported the loss of a pair of blue jeans, a "Yamaha" jersey, a chain with dog tags and keys, a roll of stamps, locks, a lighter, a pair of fatigues and a wallet containing $8.00; Clark reported the loss of a watch which had an orange dial with a black neoprene band.

2. A karate ghee is a garment sometimes worn by those who practice or exhibit the martial art of karate. Staff Sergeant McPhail was aware that the appellant possessed such a garment when he received Private Bellend's report.

boots with him a few minutes before. He further stated that the appellant had told him to keep those items for him as the military police would search appellant's room. McPhail returned to the orderly room with the appellant and informed Investigator Martin of Hice's statement.

McPhail then called his company commander, Captain Norwood, and requested authority to search the appellant's room. Captain Norwood declined to grant such authority by telephone and came to the unit. Sergeant McPhail and Investigator Martin briefed the commander concerning the foregoing events, and the three men went to Hice's room and examined the property left by the appellant. There they found a watch with an orange dial, two wallets the contents of which indicated the wallets were owned by Fitzgerald and Benton. Also found was an address book and a dog tag chain matching the description of items stolen from Ezro. The commander then recapped the facts as known by the investigator and Sergeant McPhail and authorized a search of the appellant's room to discover other reported but unrecovered stolen property including a $5.00 bill, a one dollar bill and a cigarette lighter. The search produced a $5.00 bill and a one dollar bill, both of which were found in a laundry package of clean shirts, and a small bag of marihuana.

The appellant was removed to the military police station where he was advised of his rights by another investigator. The appellant waived his rights in writing and made a statement in which he admitted entering some rooms and taking personal property therefrom.

At trial, the appellant's confession was admitted in evidence over his objection. However, the military judge dismissed the charge of possession of marihuana based upon his determination of an illegal seizure.

## I

■ Appellant contends the military judge committed prejudicial error in re-

fusing to suppress the testimony of Staff Sergeant McPhail concerning his observation of the two wallets and the watch with the orange dial in the window sill of the appellant's room. The thrust of appellant's contention is that Sergeant McPhail's entry into Room 21a and his subsequent view into Room 21b constituted a "search" which violated appellant's right to be protected against unreasonable search and seizure under the Fourth Amendment to the Constitution of the United States.

As noted, Staff Sergeant McPhail had previously sent the CQ runner to notify the appellant to report to the orderly room. When appellant did not appear, McPhail personally went to his barracks to summon him.

The appellant lived in a room that did not have a private entrance from the hall. The room had been made by dividing a larger room by adding a partition and a door. Entrance from the hall of the barracks required entry into Room 21a and thence to the door of 21b (appellant's room). Room 21a was unassigned and unoccupied, although appellant was responsible for the government property in the room and the cleanliness of the premises. However, the appellant was provided Room 21b for his own personal use.

The Fourth Amendment essentially protects a citizen's expectation of right of privacy in his person, home, papers, and effects.[3] Appellant's responsibility to insure the protection and maintenance of the government property and the cleanliness of Room 21a does not, in our opinion, give him a reasonable expectation of a right of privacy in that room.

We believe, as apparently the trial judge did, that Staff Sergeant McPhail did not in fact enter the appellant's room but merely spoke to him through appellant's open door. Staff Sergeant McPhail's reason for seeing the appellant at that time was official in

---

3. U.S.Const. amend. IV. *Also see Mancusi v. DeForte,* 392 U.S. 364, 88 S.Ct. 2120, 20 L.Ed.2d 1154 (1968); *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *Rakas v. Illinois,* —— U.S. ——, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), 24 Crim.L.Rep. 1037 (BNA).

character and not to search or spy on him. McPhail's observation of suspected stolen property was wholly inadvertent, and the items were in plain view.[4] Accordingly, we find no error.

## II

The appellant further contends that the trial judge erred to the prejudice of the appellant by admitting into evidence the confession made by appellant to Investigator Miller. The thrust of appellant's argument involves three considerations: (1) that police had interrogated the appellant after he declined to answer questions; (2) that the police examiner used the marihuana found in an illegal search and seizure to coerce the appellant into making the damaging confession; and (3) that the appellant was further coerced into the confession by compulsive forces exerted over him including his age, technique of police questioning, and custodial surroundings. The appellant's contention is that the foregoing factors jointly or severally resulted in an involuntary confession. We will discuss them seriatim.

In *Miranda v. Arizona*,[5] the United States Supreme Court promulgated a set of safeguards to protect certain constitutional rights of persons subjected to custodial police interrogation. That holding requires law enforcement officers to give specified warnings before questioning a person in custody and to follow certain specified procedures during the course of any subsequent interrogation. Unless those requirements are met, any statement made by the person in custody cannot, over his objection, be admitted in evidence against him even though the statement made may in fact be totally voluntary.

The requirements set forth in *Miranda* are equally applicable to the Armed Forces of the United States.[6] *Miranda* teaches that "[o]nce warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise. Without the right to cut off questioning, the setting of in-custody interrogation operates on the individual to overcome free choice in producing a statement after the privilege has been once invoked."[7]

In *Michigan v. Mosley*,[8] that same Court in reviewing the *Miranda* decision noted that:

"[a] reasonable and faithful interpretation of the *Miranda* opinion must rest on the intention of the Court in that case to adopt 'fully effective means . . . to notify the person of his right of silence and to assure that the exercise of the right will be scrupulously honored . . .' (citation omitted). The critical safeguard identified in the passage at issue is a person's right to cut off questioning." 423 U.S. at 103, 96 S.Ct. at 326.

That Court further noted that the requirement that law enforcement authorities respect a person's exercise of that option counteracts the coercive pressures of a custodial setting. Accordingly, *Mosley* held that the admissibility of statements obtained after a person in custody has decided to remain silent depends, under *Miranda*, on whether his right to cut off questioning was scrupulously honored.

---

4. *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *United States v. Hersh*, 464 F.2d 228 (9th Cir. 1972); *Wright v. United States*, 146 U.S.App.D.C. 126, 449 F.2d 1355 (1971).

5. 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). *See also* 10 A.L.R.3rd 974.

6. *United States v. Tempia*, 16 U.S.C.M.A. 629, 37 C.M.R. 249 (1967); *United States v. Clark*, 22 U.S.C.M.A. 570, 48 C.M.R. 77 (1973).

7. 384 U.S. at 473–474, 86 S.Ct. at 1627–1628.

8. 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975).

878

■ In the instant case the second interrogation was by a different investigator who was not aware that appellant had declined to make a statement previously. It was separated from the first interrogation both by time and place, and it came after additional damaging evidence was uncovered. We find that the investigators "scrupulously honored" appellant's exercise of his right to decline questioning and that the second interrogation was not in derogation of that right.

The second point advanced by appellant as a basis for holding the confession inadmissible concerns the seizure of the marihuana. At trial, the military judge ruled that the marihuana which was seized as contraband during the commander's authorized search of the appellant's room was seized illegally, and he dismissed the charged offense of possession of marihuana.[9]

■ Where there is some evidence that indicates the accused's statement was the likely product of other evidence that was illegally obtained, the Government has a heavier burden in establishing voluntariness than in a case in which the statement stands apart from any such possible taint.[10] However, in this case, the apparent basis for the application of the Fourth Amendment exclusionary rule to the marihuana is without legal foundation.[11]

■ We believe the military judge erred in concluding that the marihuana was found as a result of an illegal search. The company commander conscientiously reviewed the facts in making his probable cause determination. He knew that one of his reliable noncommissioned officers had received complaints from two of the victims;[12] that the appellant had been seen just outside the victims' room in a special karate garment; that the NCO had seen some of the stolen goods in appellant's room; that appellant had fled from the orderly room just after he had been ques-

9. The trial judge apparently based his ruling on the premise that the contraband found was not relevant to the stolen property for which the commander had authorized the search. While it is true that the military law requires the permission to search be limited at least in general terms to a description of the class or classes of property to be searched for and seized, such requirement does not in any sense forbid the seizure of contraband found by the searching officers while conducting an otherwise legal search of the person or property of the accused. Cf. United States v. Whisenhunt, 17 U.S.C.M.A. 117, 37 C.M.R. 381 (1967); United States v. Mathis, 16 U.S.C.M.A. 522, 37 C.M.R. 142 (1967); Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967).

10. United States v. Seay, 1 M.J. 201 (C.M.A. 1975); United States v. Foecking, 22 U.S.C. M.A. 46, 46 C.M.R. 46 (1972); United States v. Wimberly, 16 U.S.C.M.A. 3, 36 C.M.R. 159 (1966).

11. This Court is not bound by the trial judge's determination of the facts and law of the case. United States v. Nargi, 2 M.J. 96 (C.M.A.1977); United States v. Tanner, 3 M.J. 924 (A.C.M.R. 1977); United States v. Harman, 12 U.S.C.M.A. 180, 30 C.M.R. 180 (1961).

12. A witness who purports to be a victim or an observer who reports criminal activity may be considered reliable even though his reliability has not been previously tested. The rationale behind requiring a showing of credibility and reliability as set forth in Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), is to prevent searches based upon an unknown informant's tip that may not reflect anything more than idle rumor or irresponsible conjecture. Thus, without the establishment of the probability of reliability "a neutral and detached magistrate" could not adequately assess the probative value of the tip in exercising his judgment as to the existence of probable cause. Many police informants are intimately involved with the persons informed upon and with the illegal conduct at hand, and this circumstance could also affect his credibility. Eye witnesses by definition are not passing on idle rumor, for they either have been the victims of crimes or have otherwise seen some portion of it. A "neutral and detached magistrate" could adequately assess the probative value of an eye witness' information because, if it is reasonable and accepted as true, the magistrate must conclude that it is based upon first hand knowledge. United States v. Bell, 457 F.2d 1231 (5th Cir. 1972); United States v. Herberg, 15 U.S.C. M.A. 247, 35 C.M.R. 219 (1965). We further note that reports of factual observations received from citizen witnesses inherently contain a degree of reliability that arises from their lack of any underlying motive for fabrication as such a response is normally the consequence of that citizen expressing his public responsibility to aid in the suppression of criminal activities.

tioned; and that appellant had hurriedly left some of the stolen items in a room across the hall because he thought he was going to be searched. The commander came to the unit and personally confirmed much of the information before he authorized the search. We think his authorization proper.[13] Thus there was no illegal search from which any taint could flow.

■ The third point advanced for inadmissibility of the confession is the coercive nature of the interrogation by Agent Miller. We find no evidence of any coercive force being used other than the custodial interrogation itself in the investigator's office. Miller gave the appellant a proper warning of his rights and had him execute a waiver of those rights. He did appeal to the appellant's conscience by using what he described as a "mother technique" which only urged the appellant to tell the truth.[14]

■ An investigator's use of artifice or some other form of deception is permissible as long as the artifice is not likely to produce an untrue confession.[15] Here, the investigator only appealed to the appellant's antecedents in urging him to tell the truth.

We conclude that none of these contentions advanced by appellant require exclusion of the confession. The appellant was fully advised of his Constitutional rights to remain silent, and those rights were honored by police investigators. The second interrogation was proper under constitutional and statutory standards.[16] Accordingly, we find no error.

### III

■ Appellant further contends that the staff judge advocate, in his post-trial review, failed to discuss the pretrial motions of the defense, misstated the facts as to the burglary, and failed to relate the evidence to the burglary charges. We agree that the post-trial review is insufficient.

In this case, trial defense counsel in his *Goode* response [17] to the post-trial review pointed to three areas he believed were deficient.[18] Two are identical with those alleged by appellate defense counsel and the third points out the failure of the staff judge advocate to mention a clemency petition filed by counsel and then pending with the convening authority. The staff judge advocate did not amend his post-trial review to cover the enumerated items.

The Manual [19] requires (1) a summary of the evidence of the case, (2) the staff judge advocate's opinion as to the adequacy and weight of the evidence, (3) the effect of any error or irregularity respecting the proceeding, (4) a specific recommendation as to the action to be taken, and (5) reasons for both the opinions and recommendations.

13. *United States v. Harris*, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971); *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959).

14. *Cf. United States v. McQuaid*, 9 U.S.C.M.A. 563, 26 C.M.R. 343 (1958).

15. *United States v. McKay*, 9 U.S.C.M.A. 527, 26 C.M.R. 307 (1958).

16. *Michigan v. Mosley, supra*; *United States v. Collier*, 1 M.J. 358 (C.M.A.1976).

17. *United States v. Goode*, 1 M.J. 3 (C.M.A. 1975).

18. Although trial defense counsel pointed out the matters he deemed to be deficient in the staff judge advocate's post-trial review, he did not set forth what he believed to be the correct information. The trial defense counsel is not required to fulfill the responsibilities of the staff judge advocate. However, we noted in *United States v. Myhrberg*, 2 M.J. 534 (A.C.M. R.1976), that one of the purposes of the *Goode* rule was to "impel trial defense counsel to a more active participation in the post-trial review procedure" and that "trial defense counsel shares with the staff judge advocate the duty to insure that the convening authority receives the most accurate information possible to aid him in the exercise of his broad prerogatives relative to findings and, more particularly, the sentence." Merely pointing out what he believed to be an error in the post-trial review does not necessarily fulfill the foregoing requirement. Trial defense counsel must provide what he believes to be the correct information if that information is omitted from the post-trial review. Such was not done here.

19. Paragraph 85b, Manual for Courts-Martial, United States, 1969 (Revised edition).

 The staff judge advocate's opinion as to adequacy and weight of the evidence requires more than a brief summarization of the evidence and a statement that he deems such evidence legally sufficient.[20] Although the staff judge advocate may be selective as to the matters he decides to discuss in his post-trial review,[21] he must provide a discussion of the position of the parties and the standards, if any, under which material disputed issues should be considered and his conclusions and recommendations concerning them.[22]

Here the staff judge advocate failed to highlight the voluntariness issue for the convening authority. He failed to discuss the issue other than mentioning that the issue was left for the court members to determine. He failed to provide standards for review, made no mention of the defense's position on the matter, and did not state why he viewed the government's evidence as being conclusive. This was one of the primary issues in this case and the convening authority was inadequately advised thereon.[23]

We further note that the staff judge advocate failed to indicate how the burglaries were committed. The evidence at trial, although circumstantial in character, inferentially showed a breaking and entering of the victims' rooms. As this information was omitted from the review, we consider that omission as error.[24]

The remaining assignments of error have been considered and are deemed to be without merit.

Accordingly, the action of the convening authority dated 7 April 1978 is set aside. The record of trial is returned to The Judge Advocate General of the Army for a new review and action by the same or a different convening authority.

Senior Judge JONES and Judge LEWIS concur.

---

**20.** *United States v. Bennie*, 10 U.S.C.M.A. 159, 27 C.M.R. 233 (1959); *United States v. Fields*, 9 U.S.C.M.A. 70, 25 C.M.R. 332 (1958).

**21.** *United States v. Fields, supra.*

**22.** *Cf. United States v. Blackwell*, 12 U.S.C. M.A. 20, 30 C.M.R. 20 (1960). *But see United States v. Morrison*, 3 M.J. 408 (C.M.A.1977). Although obiter dicta, the views of Chief Judge Fletcher with which Judge Perry concurs, regarding the requirements to be included in a post-trial review may foretell a substantial change in this area of the law.

**23.** *United States v. Sulewski*, 9 U.S.C.M.A. 490, 26 C.M.R. 270 (1958). *See also* Footnote 20. The evidence in this case does not unerringly point to the correctness of the findings.

**24.** *Cf. United States v. Lewis*, 31 C.M.R. 575 (A.F.B.R.1961), *Pet. Den.* 31 C.M.R. 314 (1961).