UNITED STATES, Appellee,

v.

Timothy P. HARDEN, Airman Basic,
U.S. Air Force, Appellant.

No. 44,564.
ACM 23463.

U.S. Court of Military Appeals.

June 18, 1984.

For Appellant: *Colonel George R. Stevens* and *Major Richard A. Morgan* (on brief).

For Appellee: *Colonel Kenneth R. Rengert* and *Major Michael J. Hoover* (on brief).

*Opinion of the Court*

EVERETT, Chief Judge:

Contrary to appellant's pleas, a general court-martial military judge sitting alone convicted appellant of five larcenies, a conspiracy to commit larceny, three forgeries, and receiving stolen property, in violation of Articles 121, 81, 123, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 921, 881, 923, and 934, respectively. Harden's sentence to a bad-conduct discharge, 3 years' confinement, and total forfeitures was approved by the convening authority. The United States Air Force Court of Military Review affirmed the findings and sentence. 14 M.J. 598 (1982). We granted review of this issue:

> WAS THE COURT OF [MILITARY] REVIEW CORRECT IN HOLDING THAT THE MILITARY JUDGE DID NOT ERR BY ADMITTING THE TESTIMONY OF A HANDWRITING EXAMINER WHERE HIS OPINION WAS BASED, IN LARGE PART, UPON HANDWRITING EXEMPLARS WHICH HAD BEEN HELD TO HAVE BEEN OBTAINED IN VIOLATION OF ARTICLE 31, UNIFORM CODE OF MILITARY JUSTICE [10 U.S.C. § 831]?

I

Prior to trial, Chief Warrant Officer Joseph Parker, a handwriting expert, had been given samples of appellant's handwriting from his personnel records and had been asked to compare them with the handwriting on the forged checks. When Parker later requested additional handwriting samples in order to complete his examination, appellant was ordered by his commanding officer to provide them, and he complied with this order.

At trial, the defense stipulated to Parker's expertise but objected to his testifying because his opinion had been based, in part, on handwriting samples obtained in violation of Article 31. The judge suppressed the samples themselves, which appellant had provided pursuant to the commander's order, and he further ruled that Parker could not testify to any opinions based on these samples. When questioned at length to determine whether he could completely disregard the suppressed handwriting samples and still render an opinion as to whose handwriting appeared on the forged checks, Parker admitted "having difficulty in being totally objective," and he gave no opinion as to the signatures on the checks. However, he testified that he was able to be completely objective about the dollar-line entries on the suspected forged checks and that in his opinion Harden had made those entries.

The military judge determined that Parker's testimony had not been tainted in any way by consideration of the handwriting samples obtained from appellant. The Court of Military Review upheld this ruling, but added in a footnote:

> We would have found no error had the military judge not excluded the commander-directed exemplars. There is no requirement for an Article 31 warning before requesting a suspect to give handwriting samples for comparison purposes. *United States v. Lloyd*, 10 M.J. 172 (C.M.A. 1981). Consequently, the accused was not prejudiced by the document examiner's testimony even if he was unable to totally disregard the excluded exemplars.

*Id.* at 599. Senior Judge Kastl specifically "disassociate[d]" himself from the footnote. *Id.* at 601.

## II

In *United States v. Armstrong*, 9 M.J. 374 (C.M.A. 1980), we upheld the admissibility of blood specimens obtained from an accused. After extensive reexamination of Article 31 in light of its legislative history, the principal opinion concluded that "the clearly manifested intent of Congress in enacting Article 31(a) was merely to afford to servicepersons a privilege against self-incrimination which paralleled the constitutional privilege"—no more and no less. *Id.* at 383. Accordingly, this opinion concluded that handwriting specimens and voice exemplars, too, are not within the protection of Article 31, because they do not fall within the purview of the Fifth Amendment. *Id.* at 378–79. *See United States v. Mara*, 410 U.S. 19, 93 S.Ct. 774, 35 L.Ed.2d 99 (1973); *United States v. Dionisio*, 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973); *Gilbert v. California*, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). The two concurring judges in *Armstrong* specifically disassociated themselves from that portion of the principal opinion which purported to use the same rationale for handwriting and voice exemplars that was being applied to the blood specimen.

In *United States v. Lloyd*, 10 M.J. 172, 174–75 (C.M.A. 1981), the Court removed any doubts left by *Armstrong* as to handwriting specimens. There, the majority stated:

> Like blood specimens, *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), handwriting and voice exemplars are *not* protected by the privilege against self-incrimination. *United States v. Mara*, 410 U.S. 19, 93 S.Ct. 774, 35 L.Ed.2d 99 (1973); *Gilbert v. California*, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967) (handwriting); *United States v. Dionisio*, 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973); *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) (voice). Under the rationale of our recent decision in *United States v. Armstrong*, 9 M.J. 374 (C.M.A. 1980), there is no reason to require an Article 31(b) warning before requesting a suspect to give a handwriting sample or, as here, to produce a document containing his signature or

handwriting to be used for comparison purposes.

(Emphasis supplied.)

Although *Armstrong* and *Lloyd* were tried prior to the effective date of the Military Rules of Evidence, the rationale we enunciated in those opinions conforms fully to Mil.R.Evid. 301(a), which provides:

> (a) *General rule.* The privileges against self-incrimination provided by the Fifth Amendment to the Constitution of the United States and Article 31 of the Uniform Code of Military Justice are applicable only to evidence of a testimonial or communicative nature. The privilege most beneficial to the individual asserting the privilege shall be applied.

██ Because a handwriting sample is not a "statement" which triggers the warning requirement under Article 31(b) and also is not within the purview of Article 31(a), the judge should have admitted in evidence the specimens which appellant furnished pursuant to the order of his commanding officer. Therefore, Harden was unprejudiced even if, in forming his expert opinion, Chief Warrant Officer Parker relied in some manner on the samples which the judge ordered suppressed.

III

The decision of the United States Air Force Court of Military Review is affirmed.

Judge FLETCHER concurs.

COOK, Senior Judge (concurring with reservation):

In *United States v. Armstrong*, 9 M.J. 374, 384 (C.M.A. 1980), I disassociated myself from that part of the opinion which went beyond the specific issue then before us, and in *United States v. Lloyd*, 10 M.J. 172, 175 (C.M.A. 1981), I again refused to decide, *in dicta*, the application of Article 31, Uniform Code of Military Justice, 10 U.S.C. § 831, to requested handwriting exemplars. That issue is now properly before us, and I concur with the disposition of it. *See United States v. Mara*, 410 U.S. 19, 93 S.Ct. 774, 35 L.Ed.2d 99 (1973). I continue, however, to adhere to my view that, in situations where a statement is solicited from an accused, the protections of Article 31 are broader than those afforded by the Fifth Amendment. *See United States v. Lewis*, 12 M.J. 205 (C.M.A. 1982); *United States v. Leiffer*, 13 M.J. 337 (C.M.A. 1982).