**UNITED STATES, Appellee,**

v.

**Sergeant First Class Leroy MORRIS, Jr., 341–50–5746, United States Army, Appellant.**

**ARMY 9500905.**

U.S. Army Court of Criminal Appeals.

18 Dec. 1996.

---

842

For Appellant: Captain Eric S. Krauss, JA (argued); Colonel Stephen D. Smith, JA (on brief); Major J. Frank Burnette, JA.

For Appellee: Captain Steven H. Levin, JA (argued); Colonel John M. Smith, JA; Lieutenant Colonel Eva M. Novak, JA; Major Lyle D. Jentzer, JA (on brief).

Before CAIRNS, TOOMEY, and CARTER, Appellate Military Judges.

## OPINION OF THE COURT

CARTER, Judge.

A military judge sitting as a general court-martial convicted the appellant, contrary to his pleas, of conspiracy to commit larceny, larceny (two specifications), and wrongful appropriation in violation of Articles 81 and 121, Uniform Code of Military Justice, 10 U.S.C. §§ 881 and 921 (1988)[hereinafter UCMJ]. The convening authority approved the adjudged sentence to a dishonorable discharge, confinement for five years, forfeiture of $400.00 pay per month for sixty months, and reduction to Private E1. This case is before the court for automatic review under Article 66, UCMJ, 10 U.S.C. § 866.

The military judge suppressed two statements by appellant, ruling they were the product of unlawful inducements by Criminal Investigation Command (CID) agents. Appellant asserts that the use of evidence derived from these statements tainted both the decision to prosecute him and the testimony of his fellow co-conspirator. We find that the military judge erred in ruling that the statements were unlawfully induced; therefore,

appellant's claim that derivative evidence tainted his conviction is moot.

## I. BACKGROUND

This is a black-marketing case involving stolen commissary meat in Korea. Acting on a tip, CID agents set up surveillance outside the Camp Stanley gate. On 10 September 1994, the agents observed and followed an Army van allegedly used to transport the stolen meat. Subsequently, the agents made a lawful investigatory stop of the van which was driven by the appellant. After they approached the van, CID Special Agent (SA) McGuire saw several boxes of meat in plain view inside the van, apprehended the appellant for larceny, and seized ten boxes of frozen meat from the back of the van.

Special Agent McGuire orally advised appellant of his Article 31(b), UCMJ, 10 U.S.C. § 831(b), and related rights for larceny, black-marketing, and conspiracy. Appellant made oral admissions to CID agents immediately after the rights advisement and made a written statement about three hours later. The trial defense counsel challenged both the oral admissions and the written statement as products of unlawful inducements by CID agents.

After finding that the oral rights advisement was lawful, the military judge made the following cursory findings concerning the issue of unlawful inducement: Special Agent McGuire told appellant, "You are in a lot of trouble." Appellant asked, "What can I do to get out of trouble?" Special Agent McGuire replied, "If you help us, we will help you." Special Agent McGuire asked the appellant to help CID set up Sergeant First Class (SFC) Stroup (the commissary manager) and others identified in the commissary thefts. Special Agent McGuire also discussed their mutual membership in the Masons. The military judge concluded that, taken together, these circumstances "implied that if the accused fully cooperated with the CID, then that would be the way for him to get out of trouble, ergo an unlawful inducement for the statement." The military judge

suppressed appellant's immediate oral admissions and subsequent written statement.

## II. REVIEW OF TRIAL JUDGE'S RULING

■ Appellate courts "may consider the propriety of a trial ruling excluding evidence to the extent that the ruling affects other evidence which was not excluded." *United States v. Nargi*, 2 M.J. 96, 98 (C.M.A.1977), citing *United States v. Starr*, 23 U.S.C.M.A. 584, 587, 50 C.M.R. 849, 852, 1 M.J. 186, 189 (1975). Most appellate courts are limited in that review to questions of law, not fact. *Nargi*, 2 M.J. at 98; *United States v. Lowry*, 2 M.J. 55 (C.M.A.1976); Article 67(c), UCMJ, 10 U.S.C. § 867(c). The military courts of criminal appeals, however, have an express statutory mandate to "weigh the evidence, judge the credibility of witnesses, and determine controverted questions of fact." Article 66(c), UCMJ; *see also Lowry*, 2 M.J. at 58. This court may substitute its judgment for that of a military judge when conducting our Article 66, UCMJ, review of the military judge's ruling on the admissibility of evidence. *United States v. Cole*, 31 M.J. 270, 272 (C.M.A.1990); *see also United States v. Jones*, 19 M.J. 961, 964 n. 2 (A.C.M.R.1985), *aff'd*, 26 M.J. 353 (C.M.A.1988); *United States v. Davis*, 6 M.J. 874 (A.C.M.R.1979). Accordingly, in reviewing whether the decision to prosecute or evidence derived from suppressed statements was tainted, this court is not bound by a trial judge's ruling that an accused's statements were unlawfully induced.[1]

## III. UNLAWFUL INDUCEMENT

■ A confession is voluntary if, considering the totality of the circumstances, including the characteristics of the accused and the details of the interrogation, it is "an essentially free and unconstrained choice by its maker." *Schneckloth v. Bustamonte*, 412 U.S. 218, 225, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1973) citing *Culombe v. Connecticut*, 367 U.S. 568, 602, 81 S.Ct. 1860, 1879, 6 L.Ed.2d 1037 (1961); *see also United States v. Bubon-*

1. To the extent that *United States v. Pownall*, 42 M.J. 682, 687–88 (Army Ct.Crim.App.1995), conflicts with this decision concerning the reviewa-

bility of a trial judge's findings of fact, it should not be followed.

*ics,* —— M.J. —— (United States Court of Appeals for the Armed Forces, 24 Sep. 1996) and *United States v. Martinez,* 38 M.J. 82, 86 (C.M.A.1993). The prosecution must prove a statement is voluntary by a preponderance of the evidence. *Lego v. Twomey,* 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972); Military Rule of Evidence 304(b)(3) [hereinafter Mil. R. Evid.]. A statement obtained "through the use of coercion, unlawful influence, or unlawful inducement" is involuntary. Article 31(d), UCMJ; Mil. R. Evid. 304(c)(3).

■ Advice to an accused to cooperate does not, by itself, amount to unlawful inducement. *See United States v. Oakley,* 33 M.J. 27 (C.M.A.1991) (senior law enforcement noncommissioned officer admonishments to cooperate did not overbear the suspect's freely drawn conclusion that it was in his own best interest to cooperate); *United States v. Murphy,* 18 M.J. 220 (C.M.A.1984) (trial counsel advice that cooperation with Japanese police could result in a more lenient sentence provided the accused information with which to make an informed, tactical judgment as to his making a statement); *United States v. Alvarado,* 882 F.2d 645, 649–50 (2d Cir.1989) (it would be in suspect's best interest to cooperate and any cooperation would be brought to the attention of the prosecutor and judge), *cert. denied,* 493 U.S. 1071, 110 S.Ct. 1114, 107 L.Ed.2d 1021 (1990).

■ Specific promises which do not overbear the suspect's free will and rational intellect are not unlawful inducements. *See United States v. Leon Guerrero,* 847 F.2d 1363, 1366–67 (9th Cir.1988) (U.S. attorney promise that cooperation would be considered did not overbear suspect's free will); *see also United States v. Guarno,* 819 F.2d 28, 31 (2d Cir.1987) (promised leniency for cooperation not unlawful); *Layne v. State,* 542 So.2d 237, 239–40 (Miss.1989) ("best policy would be to tell the truth"; investigator's promise to inform district attorney of capital murder suspect's cooperation held lawful).

## IV. FINDINGS OF FACT

In determining whether appellant's pretrial statements were voluntary, we make the following findings of fact under Article 66(c), UCMJ:

1. Appellant is a thirty-eight-year-old, experienced sergeant first class in the field artillery with almost nineteen years of service. His service includes duty as a gunnery sergeant, platoon sergeant, acting first sergeant, drill sergeant, chief of a firing battery, and member of a special weapons team trained to assemble nuclear munitions. His education includes a GED high school certificate, jungle expert training, advanced noncommissioned officer course, and numerous hours of college credit.

2. On 10 September 1994, SA McGuire lawfully· apprehended appellant, who was driving a wrongfully appropriated government van, and seized ten boxes of stolen meat from him. From memory, SA McGuire properly and completely advised appellant of his Article 31(b), UCMJ, and counsel rights as printed on DA Form 3881, Rights Warning Procedure/Waiver Certificate. Appellant made a voluntary, knowing, intelligent waiver of those rights. Additionally, appellant later testified under oath that he had sat in on Article 15, UCMJ, 10 U.S.C. § 815, hearings and knew his rights even before the rights advisement.

3. Immediately after waiving his rights at about 1000 hours that morning, appellant orally admitted that he received the meat from SFC Stroup, the commissary manager, and explained the details of how the meat was stolen and sold. Special Agent McGuire then encouraged appellant to cooperate with CID, saying, "If you help us, we will help you." Special Agent McGuire told appellant that SFC Stroup was their primary target; that as an E7, appellant knew how the system worked; that it would be to his benefit to cooperate; that "he had nothing to lose by helping us and everything to gain"; and that if he fully cooperated, a CID agent would tell his commander, the prosecutor, and even the general court-martial convening authority how valuable his assistance was and ask

them to consider that cooperation in deciding what action to take against appellant. Appellant agreed to cooperate and set up SFC Stroup.

4. Appellant was released for about two hours to return to the commissary and tell SFC Stroup "everything went OK" with the delivery of the meat and that he would have the money in a few hours. Appellant then voluntarily met with CID again to pick up marked money to use in a sting operation to apprehend SFC Stroup and others at the commissary. During this afternoon meeting, SA McGuire asked appellant to execute a written statement. Appellant was initially reluctant to provide any more details. Special Agent McGuire reassured appellant that SFC Stroup was the ring leader. Special Agent McGuire discussed their mutual membership in the Masons; mentioned the Masonic oath of truthfulness, honor, belief in God, and integrity; and encouraged appellant to make a more detailed statement. Appellant subsequently made a written statement at about 1300 hours expanding on his previous oral admissions, then delivered the CID money to SFC Stroup.

5. Special Agent McGuire never promised appellant that, in exchange for his statements or his cooperation, he would not be prosecuted.

## V. DISCUSSION

■ The preponderance of the evidence, including the appellant's background and experience and the nature of the interrogations, shows that the appellant's decision to make these statements was his voluntary choice, free and unconstrained by any unlawful inducements. Appellant's initial oral admissions were made after being caught red-handed with the stolen meat, without any inducements or promises by CID. The CID agent's subsequent advice to cooperate in a sting operation in exchange for a CID representative speaking on appellant's behalf was

neither a specific promise of immunity from prosecution nor an unlawful inducement. See Oakley, 33 M.J. 27; Murphy, 18 M.J. 220; and Alvarado, 882 F.2d 645. Similarly, the discussion over two hours later between SA McGuire and appellant concerning their joint membership in the Masons and the Masonic principles was a lawful encouragement to the appellant to be more forthcoming by providing a follow-on statement to his prior oral admissions. Appellant is a mature, experienced soldier who knew he was in trouble as a result of being apprehended by CID with stolen commissary meat. Unlike the young airman in the Bubonics case who had no prior experience with the military justice system, appellant had almost nineteen years of military service in positions which demand tough decision-making. Appellant also had participated in Article 15, UCMJ, proceedings and knew his Article 31(b), UCMJ, rights prior to this incident. We are satisfied that appellant's decision to talk, while perhaps a difficult one to make given the seriousness of his offenses, was his own freely-made choice.

## VI. CONCLUSION

Considering the totality of the circumstances, including appellant's experience and background, his awareness of the evidence against him at the time of his apprehension, his initial oral admissions at the time of his apprehension, the conduct of the CID agents, and the lack of specific promises of immunity from prosecution, we find that appellant's free will was not overborne. Appellant's decision to waive his rights was based on his own freely drawn conclusion that cooperation was his best course of action. We hold that appellant's oral admissions and written statement were voluntary. Because there were no unlawfully induced statements to taint either the decision to prosecute or the testimony of his fellow co-conspirator, appellant's assignments of error are moot.[2]

2. We considered the excluded evidence and made our findings of fact only for the limited purpose of determining whether appellant's statements were voluntary. We cannot and do not consider the excluded evidence in performing our Article 66(c), UCMJ, duties of affirming only those charges which are legally and factually sufficient.

We have considered the matters personally asserted by the appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), and find them to be without merit.

The findings of guilty and the sentence are affirmed.

Senior Judge CAIRNS [3] and Judge TOOMEY concur.

3. Senior Judge Richard W. Cairns took final action in this case prior to his reassignment.